IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**SONJIA R. PERSONS**                                                                                  **PLAINTIFF**

v.                              **CASE NO. 4:21-CV-00975-BSM**

**PULASKI COUNTY, ARKANSAS**
**A Public Body Corporate and Politic**                                               **DEFENDANT**

## ORDER

Pulaski County's motion for summary judgment [Doc. No. 18] is granted on all of Sonjia Persons's claims except her Family and Medical Leave Act ("FMLA") claim.

### I. BACKGROUND

Persons is a black woman who, with the exception of an eighteen-month stint, worked for Pulaski County's Human Resources Department from 1998 until she was fired on March 19, 2021. Deposition of Sonjia Persons 46:19–49:25, Doc. No. 28-1. Persons received promotions and strong performance evaluations during most of that time. *See id.*; Persons Performance Reviews, Doc. No. 28-2.

In 2020, during the COVID-19 pandemic, the county began outsourcing employee benefits issues to Unum, a third-party provider. Deposition of Chastity Scifres 31:14–19, 42:20–25, Doc. No. 28-3. When Unum requested a spreadsheet containing employee data, Pulaski County's director of human resources, Chastity Scifres, appointed Persons to lead the project. Persons Dep. 65:5–66:21. Persons supervised three employees: (1) Sherry Eckhart, an Asian-American woman; (2) Beth Sanchez, a white woman; and (3) Jaime Martin, a white woman. *Id.* at 52:8–11; Scifres Dep. 31:20–32:11. Persons put Sanchez and

Eckhart in charge of compiling the spreadsheet, which was due by year-end. Persons Dep. 52:12–24; 66:13–14.

According to Persons, Scifres's supervision of the HR department, especially the spreadsheet project, did not go smoothly. In support of this contention, she states that Scifres sent mixed messages to employees about whether they should work from home or come into the office. *See* Pl.'s Resp. to Def.'s Statement of Facts ¶¶ 12–19, Doc. No. 27. She states that Scifres pushed black workers to come back to the office harder than she pushed workers from other racial backgrounds. Pl.'s Br. Supp. Resp. Mot. Summ. J. 17–18, Doc. No. 28. She states that Scifres spoke to her in a demeaning way and was hostile. *Id.* at 8; Persons Dep. 72:5–8. Finally, she states that Scifres told Sanchez and Eckhart that they would lose their jobs at the end of year because their jobs were being outsourced. Scifres Dep. 32:18–33:6. These actions hurt employee morale. Pl.'s Resp. to Def.'s Statement of Facts ¶ 29.

The spreadsheet project was not completed by the end of the year, Persons Dep. 66:17–67:17, and after Eckhart's and Sanchez's positions were terminated, the burden of completing the project fell on Persons. Pl.'s Br. Supp. Resp. Mot. Summ. J. 7. Although the first draft of the spreadsheet was submitted in early January 2021, Unum rejected it because it was incomplete. Persons Dep. 67:2–17; Jan. 25, 2021 E-Mail 1–2, Doc. No. 18-5. Scifres instructed Persons to correct the spreadsheet's deficiencies as soon as possible. *Id.*

Persons submitted the second draft on Friday, February 26. Persons Dep. 71:1–11. Persons called in sick on the following Monday and Tuesday. *Id.* at 71:15–72:24. Scifres

sent Persons a message on Tuesday explaining that Unum rejected the second draft because it was missing data. *Id.* at 72:25–73:15; Mar. 3, 2021 Text Message 1, Doc. No. 18-10. Persons failed to acknowledge receipt of the message. *Id.*

The next day, Persons requested FMLA leave based on the advice of her doctor, Brad Baltz, M.D. Persons Dep. 88:23–93:4. Although Dr. Baltz had not physically seen Persons in weeks, he was concerned about her health based on her history, which includes a stroke in 2009. *Id.* Although Persons had not formally requested an accommodation, Scifres was aware of her stroke and health needs. *Id.* at 95:22–96:17.

Scifres gave Persons fifteen calendar days to fill out her FMLA paperwork. Mar. 3, 2021 Letter, Doc. No. 18-11. During these fifteen days, and with the help of three other employees, Scifres completed the spreadsheet project. Scifres Dep. 65:12–67:21, 69:15–25. When these employees went into Persons's office to retrieve the documents needed to complete the spreadsheet, they found the office disorganized, and they found documents relating to several other projects that Persons had failed to complete. *Id.* When Persons turned in her FMLA paperwork, she discovered that her office had been cleaned out. Persons Dep. 93:5–94:9; 94:19–95:6. She was terminated for "negligent job performance" soon after she submitted her FMLA paperwork. Mar. 19, 2021 Termination Letter, Doc. No. 18-14.

Persons filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Compl. ¶ 87, Doc. No. 1. During the EEOC investigation, Pulaski County hired two black women, Sonya Cato and Yolanda Gore. Def.'s Br. Supp. Mot. Summ. J. 11, Doc. No. 19. Persons received a right-to-sue letter, Compl. ¶ 88, and timely

filed this suit alleging violations of (1) Title VII and 42 United States Code section 1981 based on disparate treatment, (2) the Americans with Disabilities Act ("ADA"), (3) the FMLA, and (4) the Fourteenth Amendment to the United States Constitution. Pulaski County is moving for summary judgment on all claims.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in her pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in the light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. DISCUSSION

Summary judgment is denied on Persons's FMLA claim, but it is granted on all other claims.

A.   <u>FMLA Claim</u>

The FMLA guarantees an employee twelve workweeks of leave during any twelve-month period if she has a serious health condition that makes her unable to perform the

4

functions of her position. *Estrada v. Cypress Semiconductor (Minn.) Inc.*, 616 F.3d 866, 871 (8th Cir. 2010). Persons alleges that Pulaski County interfered with her FMLA rights by: (1) denying leave to her; (2) retaliating against her for attempting to take leave; and (3) terminating her for taking leave. Compl. ¶¶ 83–85. Because there is sufficient evidence to permit Persons's FMLA claim to go to a jury, summary judgment is denied on this claim for two reasons.

First, even though Persons was granted leave, a reasonable jury could find that Pulaski County interfered with her FMLA rights by firing her while she was on leave. Since "every discharge of an employee while she is taking FMLA leave interferes with an employee's FMLA rights," it is left to the jury to decide whether Pulaski County would have discharged Persons regardless of her taking leave. *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 980 (8th Cir. 2005).

Second, a reasonable jury could also find that Pulaski County retaliated against Persons for exercising her FMLA rights. Persons took FMLA leave, which is protected conduct. *Sisk v. Picture People, Inc.*, 669 F.3d 896, 900 (8th Cir. 2012). She suffered an adverse employment action when she was fired. *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 999 (8th Cir. 2011). And, a reasonable jury could find that the county was upset that Persons took FMLA leave when it needed her to complete the spreadsheet project. If this is the case, her termination was causally linked to taking FMLA leave. Pulaski County argues that Persons was terminated for poor job performance, but a reasonable jury could find that this reasoning is pretext. *See Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 867–68 (8th Cir.

2006) (jury may find employer's explanation unworthy of credence because there is no basis in fact, employer varies from normal practice, or employee presents strong prima facie case).

  B. <u>Discrimination Claims</u>

 Summary judgment is granted on Persons's race discrimination and retaliation claims under Title VII and 42 United States Code section 1981.

*1. Title VII*

 Summary judgment is granted on Persons's Title VII race discrimination and retaliation claims because she has failed to present direct or indirect evidence of discrimination. *See Putman v. Unity Health Sys.*, 348 F.3d 732, 734 (8th Cir. 2003).

 Persons has provided no direct evidence of discrimination because she has pointed to no "explicit and unambiguous" instances of discrimination. *de la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs.*, 884 F. Supp. 112, 116 (S.D.N.Y. 1995), *aff'd*, 82 F.3d 16 (2d Cir. 1996). Indeed, she has offered no "evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude." *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449 (8th Cir. 1993) (quoting *Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.2d 171, 182 (2d Cir. 1992)).

 She has also failed to meet her burden of creating an inference of discrimination. To meet this burden, Persons must first establish a prima facie case of discrimination by showing that she: (1) is a member of a protected class; (2) was qualified to perform her job; (3) suffered an adverse employment action; and (4) has facts that give rise to an inference of discrimination. *See Takele v. Mayo Clinic*, 576 F.3d 834, 838 (8th Cir. 2009) (citing

*McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 874 (8th Cir. 2007)). Once she establishes a prima facie case, Pulaski County must offer legitimate non-discriminatory reasons for taking the adverse employment action against her. *Habib v. NationsBank*, 279 F.3d 563, 566 (8th Cir. 2001). If Pulaski County satisfies its obligation, Persons must then demonstrate that the reasons offered by Pulaski County are mere pretexts for discrimination. *Id.*

In support of her prima facie case, Persons argues that she: (1) is a member of a protected class because she is black; (2) was qualified to perform her job based on her past promotions and strong performance evaluations; (3) suffered an adverse employment action because she was fired; and (4) was discriminated against on the basis of her race because she had a more burdensome workload than her white counterparts, she had to return to the office unlike some of her white counterparts, and she was subjected to a hostile work environment. *See* Pl.'s Br. Supp. Resp. Mot. Summ. J. 17–19.

Persons satisfies the first three prongs of her prima facie case, but she does not meet the fourth. First, Persons's unpleasant interactions with Scifres alone do not suggest that Scifres harbored any animus towards her because of her race. *See Habib*, 279 F.3d at 566. Second, Persons has failed to show that her white comparators were similar in all respects. This is true because Persons served as the manager for the benefits division of the HR department while Jennifer Howard, Sharie Moore, and Jaime Martin served as compensation and training manager, employment records specialist, and benefits analyst respectively. *See* Pl.'s Resp. to Def.'s Statement of Facts ¶¶ 2–3, 10; E-Mails from Employees re: Work Performed from Pl.'s Office 4, Doc. No. 18-12; E-Mails from Employees re: Issues with Pl.

3, Doc. No. 18-13. It is undisputed that Persons's job responsibilities were different from those of Howard, Moore, and Martin. *See Chappell v. Bilco Co.*, 675 F.3d 1110, 1118 (8th Cir. 2012) (comparators must be similarly situated in all relevant respects to the plaintiff). Thus, Persons's workload and in-person work mandate do not create an inference of discrimination.

Summary judgment is granted on Persons's race retaliation claim for two reasons. First, she failed to respond to Pulaski County's properly supported summary judgment motion. *See* Def.'s Br. Supp. Mot. Summ. J. 24–28; Pl.'s Br. Supp. Resp. Mot. Summ. J. iii; *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."). Second, it is undisputed that Persons's supervisor, Scifres, did not know about her EEOC charge until after Persons was terminated. Pl.'s Resp. to Def.'s Statement of Facts ¶ 89. Consequently, nothing in the record indicates that Persons's termination was "tainted by [racial or retaliatory] discrimination." *Dixon v. Pulaski Cnty. Special Sch. Dist.*, 578 F.3d 862, 869 (8th Cir. 2009) *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc).

### 2. 42 U.S.C. § 1981

Summary judgment is granted on Persons's section 1981 claims for the same reasons provided above. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (section 1981 race discrimination and retaliation claims are analyzed almost identically to Title VII claims, albeit with a higher "but for" causation standard).

C.       ADA Claim

Summary judgment is granted on Persons's ADA claim because she did not address Pulaski County's brief on this claim. *See Satcher*, 558 F.3d at 735.

D.       Fourteenth Amendment Claim

Summary judgment is granted on Persons's Fourteenth Amendment claim because it is not supported, other than a brief reference to it in the introductory paragraph of her complaint.

## IV. CONCLUSION

For the foregoing reasons, Pulaski County's motion for summary judgment is granted on all of Persons's claims except her FMLA claim.

IT IS SO ORDERED this 22nd day of December, 2023.

*[signature: Brian S. Miller]*
UNITED STATES DISTRICT JUDGE